Hanni Pichel (CA Bar #268656)
WILSON SMITH COCHRAN DICKERSON
1000 Second Avenue, Suite 2050
Seattle, Washington 98104
Phone: 206-623-4100
Fax: 206-623-9723
Email: pichel@wscd.com
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMICA MUTUAL INSURANCE COMPANY, a Rhode Island Company, as subrogee of John Quang Pham,<br><br>Plaintiff,<br><br>v.<br><br>HOME DEPOT U.S.A., INC., a Georgia corporation, and JOHN DOES 1-10, unknown individuals and companies,<br><br>Defendant. | Case No.: **'22CV0629 BEN BGS**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Amica Mutual Insurance Company ("Amica") complains and alleges as follows:

**PARTIES**

1.     Amica is a Rhode Island company with its principal place of business in Rhode Island and doing business in California. During all relevant times, Plaintiff insured John Quang Pham's property located at 18771 Caminito Pasadero Unit 65, San Diego, CA 92128 ("the Property").

2.     Upon information and belief, Defendant Home Depot U.S.A., Inc. is a corporation organized and existing under the laws of Georgia with its principle place of business in Georgia.



3. Defendants John Does 1-10 are presently unknown persons and/or entities doing business in the State of California who are responsible for the water loss described in this Complaint.

## JURISDICTION & VENUE

4. This Court has jurisdiction over this matter under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy is in excess of $75,000, exclusive of interest and costs.

5. This Court is the proper venue for this action under 28 U.S. Code § 1391 because (1) the subject loss occurred in this judicial district and (2) the property damaged is situated in this judicial district.

## FACTUAL ALLEGATIONS

6. At all times relevant, John Quang Pham ("Mr. Pham") maintained a policy of insurance with Plaintiff, who insured the Property for *inter alia* property damage and certain economic losses.

7. On or around June 24, 2019, a Glacier Bay-brand faucet, SKU 732 838 and manufactured on March 30, 2012 that had previously been installed in the Property ("the Faucet") failed, which allowed a substantial amount of water to escape. The Property sustained significant property damage as a result of the faucet's failure ("the Loss"). Photos of the Faucet are shown below.





8. Mr. Pham filed a claim under his homeowner's policy with Plaintiff for the Loss, which resulted in payments made by Plaintiff under the policy totaling at least $102,580.40.

9. Plaintiff is subrogated to Mr. Pham's interests for amounts it paid under the insurance policy for the Loss. Plaintiff seeks to recover all amounts paid under the policy through this action.

## FIRST CAUSE OF ACTION
### Strict Product Liability

10. Plaintiff incorporates all preceding paragraphs herein as though set forth in full.

11. Defendants designed, manufactured, assembled, marketed, and/or sold the Faucet.

12. The Faucet failed because one of its supply lines ruptured due to a compromise in its stainless-steel braiding.

13. The supply line relied on the stainless-steel braiding to provide support for its inner polymer tubing. If the stainless-steel braiding is compromised, the tubing cannot independently resist the forces of the internal water pressure and will burst, as is evident with the burst failure of the subject inner polymer tubing. A photo of that condition is shown below.





14. Here, the stainless-steel braid had rusted and was weakened by corrosion consistent with that of pitting and crevice corrosion, which are highly localized forms of corrosion in which the presence of chlorides increases its severity. Since pitting and crevice corrosion are highly localized forms of attack, they may be difficult to visually detect while the product is in service. Therefore, they are best controlled by precluding their formation through design.

15. The Faucet's supply line's braiding was constructed of metals known throughout the industry to be subject to corrosion when exposed to chloride or chloride-containing products, so much so that in 1998, a braided polymer-coated fiber that would "provide an increased resistivity to corrosion relative to conventional reinforced hoses" was developed, which manufacturers have since integrated as it is a more corrosion-resistant material for supply lines to prevent this exact type of failure.

16. Stainless steels are particularly susceptible to SCC in chloride environments. The level of chlorides required to produce stress corrosion is very low. This was either

known to or should have been known by Defendants when designing, manufacturing, assembling, marketing, selling, and/or distributing the Faucet.

17. Alternative, proven, safer, and technologically feasible designs for supply lines are readily available, and those supply lines do not fail in this manner, which include using a plastic outer protective layer to protect against contact with chlorides, incorporating chlorine-resistant polymer braiding, or using reinforced inner polymer tubing beneath the stainless-steel braid to independently resist stresses of the internal water pressure. Defendants did not employ any of these alternatives when designing, manufacturing, assembling, marketing, selling, and/or distributing the Faucet.

18. The Faucet contained design and manufacturing defects that made it unreasonably dangerous when used in a foreseeable manner. Defendants also failed to warn the end-users of their products, like Mr. Pham, about the dangers of certain household chemicals coming into contact with the stainless-steel supply line and the potential for such contact to result in a catastrophic water loss.

19. The Faucet did not perform as safely as an ordinary consumer would have expected it to perform when used in its intended or reasonably foreseeable way.

20. As a result, Defendants are strictly liable to Plaintiff for the property and other damages directly and proximately caused by the Loss resulting from the Faucet's design, manufacturing, and warning defects.

## SECOND CAUSE OF ACTION

### Negligence

21. All preceding paragraphs are incorporated by reference.

22. Defendants owed a duty of care to all users and/or recipients of the Faucet, including Plaintiff's insured, in selling, advertising, distributing, supplying, and/or marketing the Product.

23. The Loss and resulting damages were the direct and proximate result of Defendant's negligent breach of its duties owed, including but not limited to the following:

a. Failing to exercise the required amount of care under the circumstances to avoid harm to the insured's property and therefore, breached the applicable standard of reasonable care that it owed to the insured;

b. Failing to warn users and consumers that the Faucet could cause or contribute to water leaks and/or water damage;

c. Failing to make appropriate recommendations concerning the use of the Faucet;

d. Misrepresenting that the Faucet was safe when the Defendant knew or should have known that the product was dangerous and unsafe;

e. Failing to comply with applicable federal and/or state regulations concerning the selling, advertising, distributing, supplying, marketing, shipping, and delivering the Faucet; and

f. Otherwise failing to exercise reasonable care under the circumstances that then and there existed.

24. As a direct and proximate result of such negligence, Pham sustained substantial harms and losses, including but not limited to severe property damage, resulting in payments made by Plaintiff under the applicable insurance policy.

## THIRD CAUSE OF ACTION

### Breach of Warranties

25. All preceding paragraphs are incorporated by reference.

26. Defendants were aware when selling, advertising, distributing, supplying, and/or marketing the Faucet, that the Faucet was prone to fail and/or cause water damage during normal use.

27. Defendants expressly and impliedly warranted that the Faucet was merchantable, safe, and fit for its normal purpose, and failed to warn consumers, including Pham, otherwise.



28. Defendants breached these warranties in that the Faucet was not merchantable, safe, and fit for its normal purpose at the time of sale.

29. Defendants knew or had reason to know that Pham, and other Faucet end-users, would rely on the warranties made by them and/or their agents, servants, and/or employees.

30. The defects in the Faucet were the direct and proximate cause of the damages suffered by the Plaintiff as subrogee of Pham. Defendants are therefore liable for breaching their warranties.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. For general, special, and consequential damages in an amount to be proven at trial;
2. For costs of suit, disbursements, and reasonable attorneys' fees incurred;
3. For prejudgment and post-judgment interest under California law;
4. For any other legal or equitable relief later discovered or deemed appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues in dispute.

DATED: May 4, 2022.

*s/ Hanni Pichel*
Hanni Pichel (CA Bar #268656)
WILSON SMITH COCHRAN DICKERSON
1000 Second Avenue, Suite 2050
Seattle, Washington 98104
Phone: 206-623-4100
Fax: 206-623-9723
Email: pichel@wscd.com
*Attorneys for Plaintiff*

